A11A0034. CHAMBERS v. THE STATE.
(708 SE2d 651)

ELLINGTON, Chief Judge.

A Hall County jury found Michael Chambers guilty beyond a reasonable doubt of aggravated assault, OCGA § 16-5-21 (a) (2) (with an instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury). Following the denial of his motion for a new trial, Chambers appeals, contending that the trial court erred in limiting his cross-examination of the victim and in denying his request to instruct the jury on reckless conduct as a lesser included offense of aggravated assault. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following. The victim began dating Chambers in July 2007. On October 15, 2007, Chambers visited the victim at the hotel where she was staying, and the two had an argument. Chambers verbally abused the victim and kicked her in the side. They reconciled the next day.

On October 21, 2007, Chambers again visited the victim at her hotel. The couple began arguing, and Chambers kicked the victim off the bed. The victim testified that she and Chambers struggled beside the bed and then he "ended up on top of [her] and was choking [her] . . . [with] his hands around [her] neck" until she felt she would die. As the victim tried to break Chambers' grip, she scratched his

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

face. The victim went into the bathroom, where Chambers repeatedly punched her in the face. During a long struggle in the bathroom, the victim picked up the lid of the toilet tank to defend herself but dropped it without hitting Chambers.

Eventually, Chambers stopped hitting the victim and told her to clean up her face, which was bloodied and battered. Chambers told the victim that he had done too much damage and that he needed to kill her. The victim repeatedly told Chambers that she needed to go to the hospital, and he eventually told her to get out of the room. The victim went down to the front desk and then, by ambulance, to the hospital.

The indictment charged Chambers with assaulting the victim with his hands by choking her around the neck and threatening to kill her.

1. Chambers contends that his sole intended defense at trial was justification. As a result, he contends, he needed to show that the victim was in fact the aggressor, which he intended to do by exploring on cross-examination what the victim meant when she testified that there was tension in her relationship with Chambers because she was "going through a transitional period in [her] life." Specifically, Chambers contends that a thorough and sifting cross-examination would have revealed that, in the week leading up to the alleged assault, he and the victim argued about her failure to comply fully with a drug rehabilitation program in which she was enrolled and that he was upset about the possibility that she would have to leave Georgia if she failed to complete the program, thereby ending their relationship. Chambers contends that, because such evidence would inform the jury about the status of the couple's relationship, it was relevant and material to his defense and, therefore, that the trial court abused its discretion in limiting his cross-examination on these issues.

Although OCGA § 24-9-64 entitles a defendant to a thorough and sifting cross-examination of witnesses against him, the trial court is vested with discretion to limit the scope of cross-examination to matters that are material to the issues. *Gaines v. State*, 285 Ga. App. 654, 656 (2) (647 SE2d 357) (2007); see also *Kolokouris v. State*, 271 Ga. 597, 600 (4) (523 SE2d 311) (1999) ("Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish.") (citation and punctuation omitted). In particular, "the victim's character is rarely relevant for any purpose in a criminal proceeding." (Citations

omitted.) *Kolokouris v. State*, 271 Ga. at 600 (4).[2] The trial court's exercise of its discretion to curtail cross-examination will not be disturbed on appeal unless it is abused. *Kay v. State*, 306 Ga. App. 666, 670 (4) (703 SE2d 108) (2010); *Schwindler v. State*, 254 Ga. App. 579, 586 (7) (563 SE2d 154) (2002).

In this case, Chambers fails to articulate how the evidence that the trial court excluded would have supported his intended defense of justification. Under Georgia law, a person is justified in using force against another

> when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a). Thus, "[j]ustification is an affirmative defense whereby the defendant admits acting with the intent to inflict an injury, but claims that he did so while in reasonable fear of suffering immediate serious harm to himself or another." (Citation omitted.) *Broussard v. State*, 276 Ga. 216, 216-217 (2) (576 SE2d 883) (2003). In some circumstances, evidence of a victim's general reputation for violence or of specific acts of violence by the victim may be admissible, where the defendant claims he or she justifiably used force in self-defense, to show that the defendant was in a state of reasonable fear at the time of the alleged offense against the victim. *Hewitt v. State*, 277 Ga. 327, 333 (3) (588 SE2d 722) (2003) (specific bad acts of violence by the victim); *Woods v. State*, 269 Ga. 60, 63-64 (5) (495 SE2d 282) (1998) (victim's reputation for violence). For either the victim's general reputation for violence or specific acts of violence by the victim to be admissible, the defendant must, among other procedural and substantive burdens, make a prima facie showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant responded with force only to defend himself or herself. *Hewitt v. State*, 277 Ga. at 333 (3); *Stobbart v. State*, 272 Ga. 608, 610 (2) (533 SE2d 379) (2000); *Woods v. State*,

---

[2] See OCGA § 24-2-2 ("The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct.").

269 Ga. at 63 (5).

In this case, the excluded evidence that Chambers contends was material to his justification defense was *not* evidence either of the victim's general reputation for violence or of specific acts of violence by the victim. *Smiley v. State*, 271 Ga. 734, 735 (2) (524 SE2d 234) (1999) (Evidence of any prior drug use by the victim would not have tended to prove his reputation for violence or the reasonableness of the defendant's claim that the defendant's use of deadly force was necessary.). Furthermore, Chambers failed to make a prima facie showing of justification, that is, there is no evidence that the victim was the aggressor, that the victim assaulted him, or that he used force against her only to defend himself.[3] *Hewitt v. State*, 277 Ga. at 332 (3); *Watkins v. State*, 264 Ga. 657, 662 (5) (449 SE2d 834) (1994). Finally, we conclude that the evidence that Chambers intended to elicit about the status of the couple's relationship and the nature of their arguments in the week leading up to their fight would not have shed any light on whether Chambers was in reasonable fear of suffering immediate serious harm to himself when he choked the victim and threatened to kill her. Accordingly, the trial court did not abuse its discretion in ruling that the evidence was irrelevant and in sustaining the State's objection to the evidence on that basis. *Smiley v. State*, 271 Ga. at 735 (2); *Watkins v. State*, 264 Ga. at 663 (5).

2. Chambers contends the trial court erred in failing to give his requested jury instruction on reckless conduct as a lesser included offense of aggravated assault.

> [A] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense. However, when the evidence establishes all of the elements of the indicted offense and there is no evidence showing the lesser offense, there is no error in refusing to charge the lesser offense.

(Punctuation and footnote omitted.) *Young v. State*, 294 Ga. App. 227, 230 (669 SE2d 407) (2008).

The offense of aggravated assault and the offense of reckless conduct both proscribe the same general conduct, i.e., subjecting another to actual injury or the possibility of injury. See OCGA §§ 16-5-20; 16-5-21 (a) (2); 16-5-60 (b). Because aggravated assault

---

[3] Chambers and the victim were the only witnesses to their altercation on October 21, 2007. The victim testified that she had consumed several glasses of wine that night and did not remember how the fight started, and Chambers did not testify. The first act of violence for which there is any evidence was committed by Chambers, when he kicked the victim off the bed. Furthermore, no evidence contradicted the victim's testimony that her violent acts (scratching Chambers' face and picking up the toilet tank lid) were defensive, not aggressive.

requires proof that the forbidden act is intentional, while in the case of reckless conduct the forbidden act is the product of criminal negligence,[4] reckless conduct can be deemed a lesser included offense of aggravated assault. *Bowers v. State*, 177 Ga. App. 36, 37-38 (1) (338 SE2d 457) (1985).

Chambers contends that, because "the action of putting one's hands around a person's throat for offensive purposes and the act of putting one's hands on a person's upper chest in a defensive manner are very similar," he should have been allowed to argue that he "was merely negligent in putting [the victim] in a situation where she would misperceive his actions." Although the victim did not remember exactly how their fight started, however, there was no evidence that Chambers put his hands on her upper chest in a defensive manner. To the contrary, the victim testified unequivocally that Chambers put his hands around her throat and choked her until she felt she would die. Because there was absolutely no evidentiary support for a finding that Chambers' conduct in putting his hands around the victim's throat was the result of anything less than deliberate intention, his request to instruct the jury on the offense of reckless conduct was based on mere speculation and conjecture.[5] In the absence of even slight evidence to support the requested jury instruction, the trial court properly refused to give it. *Heyward v. State*, 278 Ga. 342, 343 (2) (602 SE2d 831) (2004).

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED MARCH 24, 2011.

*Nathanael A. Horsley*, for appellant.
*Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney*, for appellee.

---

[4] OCGA § 16-2-1 (b) ("Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby.").

[5] See *Heyward v. State*, 278 Ga. 342, 343 (2) (602 SE2d 831) (2004) (Because the State's evidence showed that the defendant intentionally shot the unarmed victim in an unprovoked attack, and because the defense did not present anything to authorize a finding that the victim was armed, that he provoked the assault, or that the defendant fired in the reasonable, but mistaken, belief that he was justified in doing so, the defendant was not entitled to jury instructions on justification, mistake of fact, or voluntary manslaughter.).