300 Ga. 494
FINAL COPY

S16A1507. GIBSON v. THE STATE.

BLACKWELL, Justice.

Quinnard Gibson was tried by a Fulton County jury and convicted of murder in connection with the fatal beating of Shannon Stanley. Gibson appeals, contending that the evidence is legally insufficient to sustain his conviction, that the trial court erred when it admitted evidence of a similar transaction, and that it erred when it excluded evidence that Stanley had a reputation for violence. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Stanley was killed on January 30, 2011. On April 26, 2011, a Fulton County grand jury indicted Gibson, charging him with malice murder, felony murder, and aggravated assault. His trial commenced on August 21, 2012, and the jury returned its verdict three days later, finding Gibson guilty on all counts. Gibson was sentenced to imprisonment for life for malice murder. The verdict as to felony murder was vacated by operation of law, see Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault merged with the malice murder. On August 28, 2012, Gibson timely filed a motion for new trial, which he amended on October 30, 2014. The trial court denied the motion for new trial on February 20, 2015. Gibson filed a motion to pursue an out-of-time appeal on April 13, 2015, and the trial court granted that motion on April 29, 2015. Gibson then filed a notice of appeal on May 5, 2015, and the case was docketed in this Court for the September 2016 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that Gibson and his father shared a home in unincorporated Fulton County, and in early 2011, Stanley was staying temporarily as a guest in their home.[2] On the evening of January 29, 2011, Gibson went out with friends, leaving his girlfriend sleeping in his bedroom. The girlfriend awoke to find Stanley standing over her, and she called Gibson and told him about Stanley. Gibson became upset, he returned home, and he confronted Stanley. Gibson then took his girlfriend to a MARTA station, dropped her off, and went back out with his friends. Throughout the evening, Gibson continued to express his anger with Stanley.

Early the next morning, Gibson returned home again, where he and Stanley had an altercation. Soon thereafter, Gibson called a friend and said that he had "messed up" and had beaten Stanley with his fists, his foot, a chair, and a tackle box. The friend came to Gibson's home, where he saw Stanley sitting on the ground in a fetal position, rocking back and forth. The friend also saw blood on furniture, cabinets, the floor, tables, and a tackle box. After the friend

---

[2] It appears that Stanley was a friend of Gibson's father.

helped Gibson clean up the house, Gibson called his father, who returned home and then took Stanley to a hospital. Stanley later died as a result of blunt-force trauma to his head.

The medical examiner noted that Stanley had defensive injuries to his forearm, and Stanley had no bruises or marks on his hands consistent with him having struck anyone with his hands before his death. Gibson, on the other hand, had swollen hands, and Gibson otherwise was uninjured. Gibson was interviewed by investigating officers, and he admitted that he had fought with Stanley and had punched him with his hands. During his interview, Gibson never indicated that Stanley had hit, kicked, or threatened him or that Gibson was at any point in fear for his life. Gibson claimed, however, that Stanley was intoxicated, had started an argument with Gibson, and after fighting with Gibson, had staggered outside and fallen down, hitting his head hard against the rear bumper of a van.

At trial, Gibson principally argued that Stanley died as the result of an accidental fall to which his intoxication contributed, and his death was not

caused by Gibson beating him. On appeal, Gibson claims[3] that the circumstantial evidence does not exclude every reasonable hypothesis other than that of his guilt pursuant to former OCGA § 24-4-6,[4] as no one was present during the beating other than Gibson and Stanley, and the forensic evidence was consistent in many respects with his theory of defense. But not every hypothesis is a reasonable one, and the evidence "need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." Merritt v. State, 285 Ga. 778, 779 (1) (683 SE2d 855) (2009) (emphasis in original).

> Whether an alternative hypothesis raised by the defendant is "reasonable" is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.

---

[3] Although Gibson also claims that the State did not meet its burden of proving the absence of self-defense beyond a reasonable doubt, the jury was free to reject any evidence in support of a justification defense and to accept the evidence that the beating was not done in self-defense. See Anthony v. State, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016).

[4] This case was tried in 2012, and so, it was tried under our old Evidence Code. At the time of trial, former OCGA § 24-4-6 provided that, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." This provision of former OCGA § 24-4-6 was carried forward into the new Evidence Code, and it now can be found at OCGA § 24-14-6.

Black v. State, 296 Ga. 658, 660 (1) (769 SE2d 898) (2015) (citation and punctuation omitted). See also Pyatt v. State, 298 Ga. 742, 745 (1), n. 6 (784 SE2d 759) (2016).

Gibson relies on physical evidence of blood that showed movement by Stanley outdoors, as well as the testimony of the friend (whom Gibson summoned to the home on the morning in question), who said that he heard a loud noise outside the home and that it looked as if Stanley had hit his head on the bumper of the van. Gibson also points to the testimony of the medical examiner, who said that he could not ascertain which blow caused Stanley's death, that acute alcohol intoxication was a contributing factor in the death, and that a fall into the van's bumper hypothetically could cause death. The medical examiner, however, also testified that Stanley's intoxication was not a cause of his death and that under the circumstances, including the location of Stanley's head injuries, it was unlikely that a fall against the bumper caused his death. And there were conflicts between Gibson's own statement to police and his friend's testimony about that alleged fall. A jury could reasonably infer that Stanley did not fall against the van's bumper or that any such fall did not cause his death, but rather that Gibson inflicted all of Stanley's injuries or that Gibson

5

inflicted all but one injury and caused Stanley's death. Based upon this evidence, the jury was not required to find that the hypothesis that Gibson did not cause Stanley's death was a reasonable one. See Allaben v. State, 299 Ga. 253, 255 (1) (787 SE2d 711) (2016); Shields v. State, 285 Ga. 372, 374-375 (1) (677 SE2d 100) (2009); Mullinax v. State, 273 Ga. 756, 757 (1) (a) (545 SE2d 891) (2001). Accordingly, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Gibson was guilty of the crime of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Gibson contends that the trial court erred when it admitted evidence of a similar transaction involving Gibson and his father. Specifically, the State was allowed to prove that on January 9, 2009, an argument began when Gibson's father complained to Gibson and his girlfriend about leaving the stove turned on with food on it, that Gibson pushed his father on the head, that after some tussling, Gibson hit his father in the head with a piece of wood, and that Gibson

6

was later arrested. Under our old Evidence Code, which applies in this case,[5] it was settled that

> a similar transaction may be admitted if the State shows that (1) it seeks to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

Lamar v. State, 297 Ga. 89, 90-91 (2) (772 SE2d 636) (2015) (citation omitted).

The trial court admitted the similar transaction to show Gibson's "course of conduct,"[6] motive, and intent, which were, at the time of his trial, appropriate purposes for the introduction of evidence of a defendant's prior bad acts. See Chua v. State, 289 Ga. 220, 232 (2) (710 SE2d 540) (2011). Gibson does not dispute that the evidence establishes that he committed the prior violent act

---

[5] Again, Gibson was tried under our old Evidence Code because his trial took place in 2012. See note 2, supra. For trials beginning on or after January 1, 2013, the admissibility of "[e]vidence of other crimes, wrongs, or acts" is governed by OCGA § 24-4-404 (b). See Olds v. State, 299 Ga. 65, 69 (2), n. 5 (786 SE2d 633) (2016); Humphrey v. Williams, 295 Ga. 536, 539 (1) (b), n. 2 (761 SE2d 297) (2014).

[6] We note that this purpose has been "eliminated from the new Evidence Code." Brooks v. State, 298 Ga. 722, 727 (2) (783 SE2d 895) (2016) (citation omitted).

against his father. And as for the connection or similarity necessary to admit evidence of a similar transaction to show "course of conduct," motive, and intent under our old Evidence Code, we have explained that "a lesser degree of similarity is required than when such evidence is introduced to prove identity." Id. (citations and punctuation omitted). Although Gibson argues that the prior incident differs from the murder that he was alleged to have committed in this case, the proper focus under the old Evidence Code was on the similarities, not the differences, between the crime charged and the prior act. See Blackledge v. State, 299 Ga. 385, 390 (3) (788 SE2d 353) (2016). In each instance, Gibson argued with a man much older than himself, the argument involved Gibson's girlfriend in some way and took place at his father's house, Gibson became violent, and he beat the victim about the head with a blunt instrument. Based on these similarities, the trial court did not abuse its discretion when it concluded that the incidents were similar enough and admitted the evidence of Gibson's

prior violent act against his father.[7] See Rivers v. State, 296 Ga. 396, 401 (4) (768 SE2d 486) (2015).

3. Last, Gibson contends that the trial court erred when it excluded evidence that Stanley had a reputation for violence when using alcohol and cocaine. In the trial court, however, Gibson sought to introduce testimony relating only to specific prior conduct by Stanley toward Gibson and third persons. And Gibson argues in his appellate brief that a defendant may present evidence of the victim's prior violent acts against the defendant and third persons if the defendant establishes a prima facie case of justification. It is true

[7] Gibson asserts that evidence of the prior incident with his father was more prejudicial than probative. As indicated by our analysis, however, there is a sufficient connection or similarity between the two incidents that proof of the prior incident tends to prove the crime charged in this case. The trial court did not abuse its discretion when it determined that the probative value of the prior incident outweighed its prejudicial nature, properly leaving it to the jury to consider the prejudicial impact under detailed limiting instructions that were given by the court both when the similar transaction evidence was admitted and at the close of the case. See Farley v. State, 265 Ga. 622, 625 (2) (458 SE2d 643) (1995). Gibson also argues that, for an unrelated offense to be admitted in a self-defense case to prove course of conduct or intent, it must be so close in time to the alleged crime as to have a bearing on the defendant's state of mind at the time of the previous offense. To the extent that Gibson claimed self-defense, however, the evidence of his commission of a sufficiently similar assault two years earlier would tend to rebut his claim of justification by showing a course of conduct or intent in initiating or continuing such encounters by an attack that is unprovoked or at least disproportionate to any provocation. See id. at 623 (2). See also Dixon v. State, 267 Ga. 136, 140 (4) (475 SE2d 633) (1996).

9

under the old Evidence Code[8] that, although the character of a victim generally was neither relevant nor admissible in a murder trial, the defendant could present evidence of the victim's general reputation for violence and his specific acts of violence against the defendant and third persons if the defendant claimed justification and offered evidence that the victim was the first aggressor. See Traylor v. State, 280 Ga. 400, 401-402 (2) (627 SE2d 594) (2006); Johnson v. State, 270 Ga. 234, 235-236 (3) (507 SE2d 737) (1998); Chambers v. State, 308 Ga. App. 748, 750 (1) (708 SE2d 651) (2011). But the burden was on the proponent of the evidence to establish that the victim's prior acts involved violence and were therefore relevant to a claim of justification. See Shaw v. State, 286 Ga. 229, 232 (2) (686 SE2d 760) (2009); Bennett v. State, 265 Ga. 38, 41 (3) (453 SE2d 458) (1995). Similarly, the proponent of any evidence of the victim's reputation had the burden of showing that the evidence specifically relates to the victim's reputation for violence. See Smiley v. State, 271 Ga. 734,

---

[8] The admissibility of evidence of a victim's character is now governed by OCGA §§ 24-4-404 and 24-4-405. See Mohamud v. State, 297 Ga. 532, 535 (3) (773 SE2d 755) (2015). In particular, we note that the evidentiary rule created in Chandler v. State, 261 Ga. 402, 407 (3) (b) (405 SE2d 669) (1991), which allows evidence of specific acts of violence by a victim against third persons whenever there is a prima facie case of justification, is no longer viable under the new Evidence Code. See Clark v. State, 299 Ga. 552, 556 (2) (c), n. 5 (787 SE2d 212) (2016).

735 (2) (524 SE2d 234) (1999) (the defendant's proffered evidence was inadmissible because it would not have tended to prove the victim's reputation for violence or the reasonableness of the defendant's claim that the use of deadly force was necessary). Cf. Wells v. State, 261 Ga. 282, 283-284 (4) (b) (404 SE2d 106) (1991). As the trial court found, however, the testimony that Gibson sought to admit showed only that Stanley was obnoxious and verbally abusive when intoxicated. Such testimony "consists of neither general reputation [for violence] nor specific acts of violence and, thus, does not come within the exception to the general rule against admission of evidence of the victim's character."[9] Quillian v. State, 279 Ga. 698, 699-700 (2) (a) (620 SE2d 376)

---

[9] Even if the testimony that Gibson wanted to introduce did amount to evidence of prior acts of violence by Stanley or his reputation for violence, we nevertheless think that it would be inadmissible because Gibson did not make "a prima facie showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly attempting to defend himself." Collier v. State, 288 Ga. 756, 756-757 (2) (707 SE2d 102) (2011) (citations omitted). See also Lewis v. State, 268 Ga. 83, 84 (2) (485 SE2d 212) (1997) (a showing that the victim first cursed the defendant and swung her fist at him did not make a prima facie case of justification); Chambers, 308 Ga. App. at 751 (1), n. 3. Gibson argues that Stanley's past behavior while under the influence of drugs and alcohol should be considered when deciding whether Gibson established a prima facie case of justification. But a defendant "is not permitted to establish the prima facie case of justification by using the very evidence for which the prima facie case serves as foundation." Collier, 288 Ga. at 757 (2) (citation and punctuation omitted). See also Traylor, 280 Ga. at 403 (3) ("such prima facie case must be based upon the res gestae of the crime on trial, not on prior incidents" (citation omitted)). Although Gibson also relies on the trial court's decision to charge the jury on self-defense, that decision does not control the different issue of whether the defendant has

11

(2005) (evidence that victim was an enforcer for drug dealers). See also Howard v. State, 298 Ga. 396, 400 (2) (782 SE2d 255) (2016) (evidence of victim's membership in a gang); Prather v. State, 275 Ga. 268, 270 (2) (564 SE2d 447) (2002) (evidence that victim handled a firearm irresponsibly when he was drunk); Smiley, 271 Ga. at 735 (2) (evidence of victim's prior use of cocaine); Bennett, 265 Ga. at 40-41 (3) (evidence of victim's prior convictions for burglary and obstruction of an officer); Russell v. State, 264 Ga. 121, 122 (2) (441 SE2d 750) (1994) (evidence of victim's prior conviction for possession of cocaine); Wells, 261 Ga. at 283 (4) (b) (evidence of victim's prior convictions for disorderly conduct and burglary); Chambers, 308 Ga. App. at 751 (1) (evidence of tension in victim's relationship with defendant and arguments between them).

Judgment affirmed. All the Justices concur.

Decided February 6, 2017.

Murder. Fulton Superior Court. Before Judge Ellerbe.

Genevieve Holmes, for appellant.

_____

established a prima facie case of justification under the three-pronged test set forth above. See Collier, 288 Ga. at 757 (2).

12

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Joshua D. Morrison, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.