**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 7, 2020**

# In the Court of Appeals of Georgia

A19A2416. CHESTNUT v. THE STATE.

RICKMAN, Judge.

Shontavious Chestnut contends the evidence presented at trial was insufficient to support his convictions of entering one automobile and attempting to enter a second automobile. Because the State presented sufficient evidence, we affirm.

The charges against Chestnut arose out of a murder, and Chestnut was tried jointly with the actual shooter, Damarius Thompson, who was convicted of the murder and a number of other crimes. Thompson's case is not before us. In this appeal, Chestnut argues that his convictions were based on circumstantial evidence alone, and that the evidence failed to "exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. We disagree.

Construed in favor of the verdict, and relative to the counts for which Chestnut was convicted, the evidence presented at trial showed that on March 10, 2015, at about 2:00 p.m., two men in a black BMW parked between a white and a black pickup truck in a Kroger parking lot. The driver got out of the BMW and looked into the windows of the black truck, "mess[ed] with the passenger door handle," moved around as if looking for something, then returned to the driver's seat of the BMW and closed the door. Meanwhile, Thompson got out of the BMW, entered the white pickup truck and closed the door. The owners of the two trucks, who were working nearby, saw what was happening and ran toward their trucks. The owner of the black truck described the men as "[t]wo black males. One light skin, one dark skin." The person looking into his black truck was the light-skinned man.

The owner of the white truck, who kept a .357 caliber Glock inside the vehicle, ran up to his truck, slapped the driver's window, and was shot dead by Thompson with his own gun. Thompson then got out of the black truck and back into the passenger seat of the BMW, and the two men drove off. The event was captured on a security camera and some portion of the video was played on the local news that night.

2

At the time, Thompson lived with his girlfriend in her home. His girlfriend had a second roommate, and the roommate had met Thompson as a result. Thompson's girlfriend had just purchased a black BMW for Thompson the day before the murder, and the car had been "detailed" by the dealer prior to the transaction.

While watching a news report about the crime in which video surveillance footage was shown, both the girlfriend and the roommate immediately recognized Thompson and the black BMW. The roommate initially testified that she recognized the BMW, Thompson, and "[t]he other guy," but she later testified that she did not recognize or even see the BMW driver on the news and that she only learned from the girlfriend that Chestnut was the driver. At some point, the girlfriend told the roommate that Thompson said he was involved and that, "I f'd up, I messed up."

One or two days after the crime, the roommate found the girlfriend and Thompson burning clothing in the garage, which the girlfriend said was Thompson's clothing from the day of the murder. The roommate also witnessed the girlfriend wiping down the BMW. And Thompson told the roommate that he shot the victim because the victim had gotten too close. Later that day, Chestnut arrived at the girlfriend's home, and the girlfriend told the roommate that he had been driving the

3

BMW on the day of the murder. The roommate later identified Chestnut from a photo lineup. At trial, the roommate described Chestnut as having "light skin."

Officers took possession of the black BMW from the girlfriend's home shortly after 8:00 a.m. on March 12, less than two full days after the murder. The girlfriend told the officers that she had loaned the BMW to Thompson on the day of the murder. When an officer returned the BMW four days later, he saw a burn mark on the garage floor and cleaning supplies nearby. The State presented DNA evidence taken from the steering wheel of the BMW, which matched the DNA sample taken from Chestnut. Other DNA evidence was found on the gearshift that did not come from Chestnut, Thompson, or the deceased victim.

The State also introduced evidence to show that Chestnut had twice previously been prosecuted for and convicted of entering an automobile and that on the latter occasion, he was in possession of a semi-automatic handgun.

Chestnut was charged with felony murder as a party to the crime for Thompson's shooting, entering an automobile with intent to commit theft for being

a party to Thompson's entry into the white truck, and criminal attempt to enter an automobile with intent to commit theft for attempting to enter the black truck.[1]

The trial court granted a directed verdict on Chestnut's felony murder count. The jury found Chestnut guilty as a party to the crime of entering the deceased victim's truck and guilty of attempting to enter the black truck. Following the denial of his motion for new trial, Chestnut appeals but argues only that the circumstantial evidence was insufficient to support his convictions.[2]

A conviction based on circumstantial evidence alone must exclude every other reasonable hypothesis save for the guilt of the accused. See OCGA § 24-14-6. This issue is principally for the jury:

> [N]ot every hypothesis is a reasonable one, and the evidence need not exclude every *conceivable* inference or hypothesis—only those that are reasonable. Whether an alternative hypothesis raised by the defendant

---

[1] Chestnut was also charged with hindering the apprehension of Thompson, but that charge was later withdrawn.

[2] The State argues that the evidence against Chestnut included direct evidence, asserting that the roommate identified Chestnut from the news video as the driver of the BMW, and that, therefore, the caveat to OCGA § 24-14-6 does not apply. Because there are ambiguities in the transcript as to whether the roommate identified Chestnut from the news video, our decision excludes consideration of that possible direct evidence. Instead, our review is based on the conclusion that all of the evidence against Chestnut was circumstantial.

is "reasonable" is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.

(Citations and punctuation omitted; emphasis in original.) *Gibson v. State*, 300 Ga. 494, 495 (1) (796 SE2d 712) (2017).

Here, the circumstantial evidence showed that the BMW was detailed before the girlfriend purchased it for Thompson; that the BMW was in Thompson and the girlfriend's possession for less than two full days before officers processed it for DNA and fingerprints; that the BMW was located at the girlfriend's house for some portion of that time; that at some point during those two days, Chestnut's DNA came to be on the steering wheel suggesting that he drove the car; that Chestnut and Thompson were together at the girlfriend's home on either the day after the murder or the next day, which was the same day that the girlfriend and Thompson burned the clothes that Thompson was wearing at the time of the murder; that Thompson and a light-skinned man committed the crimes; that Chestnut was described as light-skinned; and that the girlfriend, who helped wipe down the BMW after the murder, told the roommate that Chestnut had been driving the car on the day of the murder.

6

This evidence supported the jury's conviction, and the jury's rejection of the theory that someone else was with Thompson at the time of the crime was not insupportable as a matter of law. Accordingly, the jury was authorized to conclude that the evidence excluded every other reasonable hypothesis save that Chestnut was the driver seen in the video participating in the crimes. See OCGA § 24-14-6.

The evidence also showed that the owner of the black truck personally observed Chestnut "messing with the door handle" of his truck at the same time that he observed Thompson inside the white truck. That evidence itself was sufficient for a reasonable juror to conclude that Chestnut attempted to enter the black truck, i.e., that he took a substantial step toward doing so. See OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."). Further, the State presented two prior convictions for unlawful entry into an automobile, which suggest Chestnut had the intent to break into the black truck. Thus, Chestnut's assertion that he was merely present at the scene of the crime and that the State failed to show he intended to break into the black truck is without merit. See *Brown v. State*, 312 Ga. App. 489, 490 (1) (718 SE2d 847) (2011)

(repeatedly pulling at a vehicle's door handle is evidence of a substantial step at entering an automobile).

In sum, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Chestnut was guilty of the two counts for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*