**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 3, 2026**

# In the Court of Appeals of Georgia

A25A2129. MITCHELL v. THE STATE.

DILLARD, Presiding Judge.

After trial, a jury convicted Bruce Mitchell of entering an automobile with the intent to commit theft. Mitchell now appeals, arguing (1) the evidence was insufficient to support his conviction; (2) the trial court erred in allowing testimony from two witnesses not included on the State's witness list; and (3) the court erred in admitting a surveillance video without a proper foundation. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the afternoon of March 7, 2023, Charles Watkins was driving to pick up his grandson from school before heading to his job at Beasley Forest Products (a local

---

[1] See, e.g., *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

sawmill), where he worked the night shift. As he stopped at a four-way intersection, Mitchell—whom Watkins knew as a neighbor—approached the truck and asked to borrow ten dollars. Watkins loaned Mitchell the money, taking it from the $53.00 he had stashed in the center console. And after seeing the cash, Mitchell asked if it was "real money." Watkins said that it was and handed him the ten dollars. He then left to get his grandson and, after dropping him off at home, arrived at the sawmill at 4:00 p.m. to start his shift.

Around 10:30 p.m., as Watkins was taking a scheduled break, a co-worker approached and told him that someone broke into his truck. Watkins immediately investigated the matter, noticed his truck's passenger-side window was smashed (apparently by a nearby brick), and discovered the cash from his center console had been taken. He then asked the night-shift supervisor, Randy Pearce, to help him review the surveillance footage from the sawmill's security cameras near the parking lot. In the videos, a small, reddish pickup truck drove past the mill's parking lot several times over the course of a few minutes. After one drive-by, Watkins's truck's alarm sounded; and right after that, the pickup sped by one last time. A video from a

different camera showed a man walking through the parking lot, bypassing all the other vehicles as he headed straight toward Watkins's truck.

Although none of the videos showed the actual break-in or a clear image of the man walking through the parking lot, Watkins identified Mitchell as the perpetrator based on his gait and "sporty" boots—which Watkins noticed Mitchell wearing when he gave him ten dollars earlier that day. Watkins also recognized the small pickup truck in the video as a vehicle belonging to a neighbor who occasionally let Mitchell borrow it. By this point, law-enforcement officers arrived on the scene, viewed the surveillance videos, and interviewed Watkins—who conveyed his suspicions that Mitchell broke into his vehicle. The officers then went to Mitchell's residence; noticed a sun-faded, red pickup truck parked nearby; and determined the owner of the vehicle was Kelly Mackey. Officers questioned Mackey, who said that he recently loaned the vehicle to Mitchell.

The State charged Mitchell, via accusation, with one count of entering an automobile with the intent to commit theft. The case then went to trial, during which the State presented the above evidence—including the mill's surveillance videos from the night of the break-in. And at the end of the trial, the jury found Mitchell guilty.

Mitchell later filed a motion for new trial, which the trial court denied. This appeal follows.

1. In his third enumeration of error (which we address first), Mitchell argues the evidence was insufficient to support his conviction on the charge of entering an automobile with the intent to commit theft. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] Importantly, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact

---

[2] See *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29(1) (733 SE2d 72) (2012) (quotation marks omitted). See *Jackson v. Virginia*, 443 U.S. 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury have found the essential elements of the crime beyond a reasonable doubt).

necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn to Mitchell's specific challenge to the sufficiency of the evidence supporting his conviction.

OCGA § 16-8-18 provides: "If any person shall enter any automobile or other motor vehicle with the intent to commit a theft or a felony, he shall be guilty of a felony . . . ." And here, the accusation charged Mitchell with unlawfully entering "a 2011 GMC Sierra Pickup Truck, an automobile, the property of Charlie Watkins, with the intent to commit a theft therein . . . ." In response, Mitchell implies this evidence was circumstantial and, thus, insufficient to support his conviction; but direct evidence of his guilt was presented through Watkins's testimony. As a result, the codified rule that to warrant a conviction on circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused"[5] does not apply.[6]

---

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (quotation marks omitted).

[5] OCGA § 24-14-6.

[6] See *State v. Canup*, 300 Ga. App. 678, 682(2) n.3 (686 SE2d 275) (2009) (explaining that the "reasonable hypothesis" rule codified in OCGA § 24-14-6 "applies only when the evidence against the accused was entirely circumstantial"

Indeed, although the surveillance video did not show the face of the man walking through the mill's parking lot just before the truck's alarm sounded, "[t]here is no requirement that the direct evidence upon which a criminal conviction is based take the form of a positive identification."[7] Rather, a criminal conviction can be based on "an eyewitness' general description of the perpetrator."[8] This is exactly what Watkins did at trial—testifying that he believed the man in the surveillance footage was Mitchell based on his familiarity with him as a neighbor and because of the "sporty" boots he was wearing. The State presented direct evidence, then, connecting Mitchell to the break-in of Watkins's vehicle.[9]

Moreover, even if we agreed the evidence against Mitchell was entirely circumstantial, we would still disagree that it was insufficient to support his

(citation and punctuation omitted)).

[7] *Gresham v. State*, 246 Ga. App. 705, 707(2) (541 SE2d 679) (2000).

[8] *Id.*

[9] See *id.* at 705–07(2)(holding that although eyewitness did not see perpetrator's face, his testimony that defendant fit the height, build, and racial attributes of the perpetrator, and was wearing clothing and riding a bicycle like that of the perpetrator when he was brought back to scene of crime for show-up identification, was direct evidence of guilt, rather than merely circumstantial, sufficient to support conviction for entering an automobile with intent to commit theft).

conviction. Not every hypothesis is reasonable, and the evidence "need not exclude every conceivable inference or hypothesis—only those that are reasonable."[10] And whether an alternative hypothesis raised is "reasonable" is a question "committed principally to the jury."[11] So, if the jury was authorized to find that the evidence—even though circumstantial—was sufficient to "exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law."[12]

Here, Watkins testified that he saw Mitchell earlier on the same day his truck was broken into and that Mitchell remarked about the amount of cash he had in his vehicle after he was given ten dollars. Significantly, Watkins also testified—as did one of the law-enforcement officers who also viewed the surveillance footage—that the man in the video walked straight toward Watkins's truck, bypassing all other vehicles

---

[10] *Gibson v. State*, 300 Ga. 494, 495 (1) (796 SE2d 712) (2017) (citation and punctuation omitted). Accord *Chestnut v. State*, 353 Ga. App. 530, 532 (838 SE2d 605) (2020).

[11] *Gibson*, 300 Ga. at 495 (1) (citation and punctuation omitted). Accord *Chestnut*, 353 Ga. App. at 532.

[12] *Gibson*, 300 Ga. at 495(1) (citation and punctuation omitted). Accord *Chestnut*, 353 Ga. App. at 532.

in the parking lot. Additionally, Watkins testified that a small pickup truck—closely resembling one Mitchell often drove—could be seen in the footage driving past the mill's parking lot several times shortly before and after his truck's alarm started blaring. Law enforcement then found a vehicle matching the one in the video near Mitchell's residence; and the owner of that pickup truck confirmed that he recently allowed Mitchell to use it. Given these circumstances, the evidence was sufficient to support Mitchell's conviction.[13]

---

[13] See *Chestnut*, 353 Ga. App. at 533 (holding circumstantial evidence that the vehicle driven by participants during crimes was only in the possession of co-participant and girlfriend for less than two full days before officers processed it for DNA and found the defendant's DNA on the steering wheel, that the co-participant and a light-skinned man committed the crimes, that the defendant was described as light-skinned, and that the girlfriend told her roommate that the defendant had been driving the vehicle on the day of the crimes was sufficient to support the jury's finding that the defendant was one of the participants in the crime of entering an automobile); *Gresham*, 246 Ga. App. at 707(2) (explaining that even if the State's evidence could be characterized as solely circumstantial, there was eyewitness testimony that the defendant fit the height, build, and racial attributes of the perpetrator, and was wearing clothing and riding a bicycle like that of the perpetrator when he was brought back to scene of crime for a show-up identification). Although not included as a claim of error, Mitchell appears to argue the trial court should have granted him a new trial because the verdict was contrary to the evidence or strongly against the weight of it. See OCGA §§ 5-5-20; 5-5-21. But a motion for new trial based on OCGA § 5-5-20—*i.e.*, that the verdict is contrary to the evidence—"addresses itself only to the discretion of the trial judge." *Allen v. State*, 296 Ga. 738, 741(2) (770 SE2d 625) (2015) (quotation marks omitted). Similarly, whether to grant a new trial based on OCGA § 5-5-21 is "one that is solely in the discretion of the trial court, and the appellate courts

2. Mitchell also maintains the trial court erred in allowing two witnesses to testify when they were not on the State's witness list. Again, we disagree.

OCGA § 17-16-8(a) provides, in relevant part, as follows:

The prosecuting attorney, not later than ten days before trial, . . . shall furnish to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses, unless for good cause the judge allows an exception to this requirement, in which event the counsel shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify.

The Supreme Court of Georgia has held that this rule is "designed to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview."[14] And importantly, the trial court may allow an exception to the rule when "the trial judge in his discretion determines that the defendant can be protected by some other form of relief."[15]

---

do not have the same discretion to order new trials." *Id.* (quotation marks omitted).

[14] *Mize v. State*, 269 Ga. 646, 653(7) (501 SE2d 219) (1998). Accord *Bogan v. State*, 270 Ga. App. 162, 164(2) (605 SE2d 872) (2004).

[15] *Bogan*, 270 Ga. App. at 164(2) (quotation marks omitted).

Here, shortly after jury selection, the State's prosecutor acknowledged that Pearce (the night-shift supervisor at the sawmill) and Mackey (Mitchell's neighbor who owned the small pickup truck) were inadvertently omitted from the final witness list. But the prosecutor added that both witnesses' names and information *had* been provided to Mitchell in discovery. Even so, Mitchell objected but requested no remedy other than excluding Pearce and Mackey from testifying, which the trial court denied.

Now, Mitchell contends the trial court erred by failing to exclude Pearce and Mackey's testimony based on their initial omission from the State's witness list. This argument is a nonstarter. The names of both witnesses were provided during discovery, and Mitchell made no claim of surprise. So, the *codified* purpose of the rule in OCGA § 17-16-8(a) was not undermined and Mitchell was not prejudiced.[16] Moreover, exclusion of evidence for a violation of criminal-discovery procedures is "a particularly harsh sanction and should be imposed only where there is a showing of prejudice to the defense and bad faith by the State."[17] Mitchell made no such

---

[16] *See id.* at 165(2).

[17] *Tarpley v. State*, 298 Ga. 442, 446(4) (782 SE2d 642) (2016) (quotation marks omitted). Accord *Chance v. State*, 291 Ga. 241, 245(5) (728 SE2d 635) (2012).

showing here. The trial court did not err, then, in allowing Pearce and Mackey to testify at trial.[18]

3. Mitchell also claims the trial court erred in admitting the surveillance-video footage from the sawmill's security cameras into evidence without a proper foundation being laid. Once again, we disagree.

OCGA § 24-9-923(c) governs the method for "admitting video recordings created by unmanned cameras such as the surveillance video admitted by the trial court in this case,"[19] providing:

---

[18] See *Bogan*, 270 Ga. App. 164–65(2) (concluding that although the State inadvertently omitted a witness from the witness list, the trial court did not abuse its discretion in allowing the witness's testimony given that he had been identified at an earlier hearing); *McLarty v. State*, 238 Ga. App. 27, 29(2) (516 SE2d 818) (1999) ("When the identity and involvement of a witness are otherwise disclosed to the defendant in discovery provided to him by the State, the [codified] purpose of the witness list rule is served and the court may allow the State to call the witness even though he or she was not listed on the State's formal witness list."); see also *Valentine v. State*, 293 Ga. 533, 536(2) (748 SE2d 437) (2013) (holding that by failing to ask for more time to prepare for the testimony of an expert witness, the defendant waived any claim of error with respect to failure of trial court to give his lawyer more time); *Wilson v. State*, 370 Ga. App. 399, 403–04(1) (897 SE2d 597) (2024) (finding that even if the State failed to comply with the statute requiring disclosure of an expert, the defendant did not argue that he suffered any prejudice as a result).

[19] *Brannon v. State*, 298 Ga. 601, 608(5) (783 SE2d 601) (2016).

Subject to any other valid objection . . . video recordings . . . produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that, prior to the admission of such evidence, the date and time of such . . . video recording shall be contained on such evidence, and such date and time shall be shown to have been made contemporaneously with the events depicted in such . . . video recording.[20]

But as to the date and time, the fact that "the date-time stamp does not reflect the actual time when the images were captured goes to the weight to be given the evidence, not its admissibility."[21] And importantly, we review the trial court's decision to admit evidence such as this for an abuse of discretion.[22]

---

[20] OCGA § 24-9-923(c).

[21] *Mitchell v. State*, 320 Ga. 673, 677(2)(b) (911 SE2d 607) (2025) (quotation marks omitted). Accord *Brannon*, 298 Ga. at 609(5).

[22] See *Moore v. State*, 305 Ga. 251, 253–54(2) (824 SE2d 377) (2019) (noting that the trial court's decision to admit video surveillance footage is reviewed under an abuse of discretion standard); *Thompson v. State*, 372 Ga. App. 335, 338(1) (904 SE2d 409) (2024) (same).

Here, during Watkins's testimony, the State's prosecutor asked him if the sawmill parking lot had security cameras. Watkins said they did and explained that he watched surveillance footage from those cameras—with the help of Pearce—on the night his truck was broken into shortly after the incident occurred. Watkins also explained that the footage he viewed was turned over to law-enforcement officers that same night. Mitchell's counsel then objected, arguing that Pearce (rather than Watkins) was the only witness who could lay a proper foundation for admitting the videos into evidence. The prosecutor replied that Watkins could properly authenticate the videos because he viewed them on the night of the break-in and could testify that they were the same videos. At this point, the trial court explained it would overrule Mitchell's objection once Watkins reiterated that they were the same videos. Watkins then confirmed the videos were the ones he viewed on the night of the break-in, and the court then admitted them into evidence.

Mitchell argues the trial court erred in admitting the videos into evidence, claiming the State failed to lay a proper foundation for them. This contention lacks merit. Watkins testified that he knew the mill's parking lot had security cameras, that he viewed the surveillance footage from those cameras on the night of the break-in,

13

and that those videos were turned over to law enforcement that same evening. This testimony was more than sufficient because OCGA § 24-9-923(c) does not require the testimony of an audio-visual expert before the admission of such evidence, but only dictates that "competent evidence" be presented to the court, and that "such items tend to show reliably the fact or facts for which the items are offered[.]"[23]

Moreover, shortly after Watkins's testimony, Pearce—the night-shift supervisor—testified that he was familiar with the security cameras in the mill's parking lot, that he viewed the footage with Watkins on the night in question, and that the mill's IT department emailed the videos to law enforcement. Given these circumstances, even if we agreed that Watkins's testimony was insufficient, Pearce's testimony laid a proper foundation, and so the videos were admissible.[24] The trial court did not err, then, in overruling Mitchell's foundation objection.[25]

---

[23] OCGA § 24-9-923(c).

[24] See *Powell v. State*, 226 Ga. App. 861, 863(1)(a) (487 SE2d 424) (1997) (holding the fact that the foundation was established after the evidence was admitted is not grounds for reversal, as the trial court may allow the foundation to be laid after the admission of the evidence); *Gregg v. State*, 201 Ga. App. 238, 240(3)(a) (411 SE2d 65) (1991) (same).

[25] See *McCulloch v. State*, 357 Ga. App. 67, 72–73(3) (849 SE2d 795) (2020) (holding trial court did not abuse its discretion in allowing self-storage facility's

For all these reasons, we affirm Mitchell's conviction.

*Judgment affirmed. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*

surveillance camera footage into evidence in second-degree burglary prosecution given employee's testimony that camera system operated continuously and was in good working order when incidents occurred); *Yancey v. State*, 342 Ga. App. 294, 300(2) (802 SE2d 702) (2017) (concluding that while the better practice to lay foundation might have been to have dispatcher who viewed video of alleged burglary of sheriff's office testify about the security camera system, trial court was entitled to view recording of video dispatcher's boyfriend created with his phone given that boyfriend was at office when video of burglary was recorded).