**FOURTH DIVISION
DOYLE, P. J.,
MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 29, 2014**

# In the Court of Appeals of Georgia

A14A0751. OLIVER v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Darius Oliver of one count each of voluntary manslaughter, aggravated assault, criminal trespass, and possession of a firearm during the commission of a felony. Oliver appeals his convictions and the denial of his motion for new trial, arguing that the trial court erred in excluding evidence of the victim's propensity for violence. For the reasons set forth *infra*, we affirm Oliver's convictions.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in the early morning hours of April 29, 2012, Chasmyn Donald was out with friends when she received a call from her boyfriend, Oliver, who asked her to pick him up

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

from a nightclub that he and his friends had just left. But shortly after Donald and her friends picked up Oliver and his friends, she and Oliver began arguing. This argument escalated into a fight, at which point Donald's friend, who was driving, demanded that Oliver and his friends get out of her car. They complied, but as Donald and her friends drove away, Oliver drew a handgun he was carrying and fired it into the air.

A day and a half later, on April 30, 2012, Ricardo Reese—who had recently become romantically involved with Donald—and one of his friends were socializing with Donald and one of her friends at Donald's apartment when someone began knocking angrily on the front door. Looking through the door's peephole, Reese's friend, and then Donald, saw that it was Oliver who was demanding entry. Scared and still upset over their fight from the night before last, Donald refused to open the door for Oliver. But this refusal further angered Oliver, and a moment later, he sprinted around the apartment building to Donald's back door and kicked it open.

Donald then fled upstairs and locked herself in a bathroom. Oliver followed, but after yelling at Donald to open the door for a minute or so, he walked back toward the stairs and told Donald's visitors that the "party was over." At that point, Reese directed a racial epithet at Oliver, removed his shirt, and started up the stairs. Oliver warned Reese that he did not want to fight, then drew his handgun, and from several

2

feet away fired two shots into Reese's chest, killing him. Immediately, everyone else in the apartment fled, including Oliver. But as Oliver reached the parking lot, Reese's friend, who had retrieved a handgun from Reese's car, began firing at him. Consequently, Oliver dashed off to some nearby woods and hid there until police officers eventually found and arrested him a short time later.

Thereafter, Oliver was charged, via indictment, with one count of malice murder; one count of aggravated assault; one count of burglary; two counts of felony murder, which were predicated upon the aggravated-assault and burglary charges, respectively; and two counts of possession of a firearm during the commission of a felony, which also were predicated upon the aggravated-assault and burglary charges respectively.

Prior to his trial, Oliver filed a notice of his intent to present evidence of Reese's propensity for violence in support of his justification defense, *i.e.*, that he shot Reese in self-defense. And following a pre-trial hearing on the issue, the trial court expressed serious skepticism as to whether such evidence was admissible. Nevertheless, the court reserved ruling on the issue and stated that Oliver would be allowed to make a proffer of the expected evidence at the appropriate time.

Oliver was then tried, during which the three witnesses to the shooting testified, as did the law-enforcement officers who investigated the incident. In addition, Oliver testified in his own defense, claiming that he shot Reese because he feared that Reese and his friend were about to attack him. And after this testimony, Oliver once again sought to present evidence of Reese's propensity for violence. Specifically, he proffered that a defense witness would testify that Reese shot and injured the witness and his then 18-month-old son in 1992 (for which Reese pleaded guilty to two counts of aggravated assault), and that, subsequently, the witness learned that Reese had a reputation within the community for being prone to violence. But despite this proffer, the trial court ruled that such character evidence was inadmissible.

At the conclusion of the trial, the jury acquitted Oliver on the charges of malice murder, felony murder predicated upon burglary, and possession of a firearm during commission of a burglary. However, the jury convicted him on the charges of voluntary manslaughter, as a lesser-included offense of the remaining felony-murder count, aggravated assault, criminal trespass, as a lesser-included offense of burglary, and possession of a firearm during the commission of an aggravated assault.

Thereafter, Oliver obtained new counsel and filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

In his sole enumeration of error, Oliver contends that the trial court erred in excluding evidence of Reese's propensity for violence. Specifically, he argues that the trial court erred in finding that, under OCGA §§ 24-4-404 (a) and 24-4-405, neither evidence of Reese's reputation for being prone to violence nor his prior, specific violent acts were admissible. We do not agree that the exclusion of this evidence constitutes reversible error.

We first note that, as a general rule, admission of evidence is "a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[2] An abuse of discretion does, however, occur when the trial court significantly misapplies the law.[3] With these guiding principles in mind, we turn now to Oliver's specific claim of error.

_____

[2] *Martinez v. State*, 306 Ga. App. 512, 525 (6) (702 SE2d 747) (2010) (punctuation omitted); *see Burgess v. State*, 292 Ga. 821, 823 (4) (742 SE2d 464) (2013) ("On appeal, the admission of evidence is reviewed for an abuse of discretion.").

[3] *See State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011); *Williams v. State*, 277 Ga. 598, 601 (1) (e) (592 SE2d 848) (2004) (holding that when the trial court has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished).

5

Oliver was tried in April 2013, and therefore Georgia's new Evidence Code was applicable.[4] As such, we begin our analysis with the text of OCGA § 24-4-404 (a) (2), which closely tracks Federal Rule of Evidence 404 (a) (2):[5]

> Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for . . . [s]ubject to the limitations imposed by Code Section 24-4-412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor . . . .[6]

In analyzing Federal Rule of Evidence 404 (a) (2), the federal courts[7] have noted that the purpose of this rule is to provide "one of the few instances in which character

---

[4] *See* Ga. Laws 2011, p. 99, § 101.

[5] *See* Fed. R. Evid. 404 (a) (2).

[6] OCGA § 24-4-404 (a) (2) (emphasis supplied).

[7] Given the similarity between the Georgia's new evidence code and the Federal Rules of Evidence "it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts." *Jones v. State*, 326 Ga. App. 658, 660 (1) (757 SE2d 261) (2014) (punctuation omitted); *see also Williams v. State*, ___ Ga. App. ___, 2014 WL 4197399, *2 n. 14 (2014).

evidence is admissible to allow the jury to infer that a person acted on a specific occasion in conformity with his character."[8] And when a defendant raises a self-defense claim, "reputation evidence of the victim's violent character is relevant to show the victim as the proposed aggressor."[9]

Given the foregoing, Oliver contends that evidence of Reese's propensity for violence was admissible at trial to support his self-defense claim under OCGA § 24-4-404 (a) (2). He therefore argues that the trial court erred by ruling otherwise and further erred by ruling that this evidence could not be presented via testimony about Reese's reputation or specific instances of Reese's violent conduct, pursuant to OCGA § 24-4-405.[10] However, although the trial court subsequently analyzed this

---

[8] *United States v. Keiser*, 57 F3d 847, 854 (III) (A) (9th Cir. 1995).

[9] *United States v. Taken Alive*, 262 F3d 711, 714 (II) (8th Cir. 2001); *see also United States v. Burks*, 470 F2d 432, 434-35 (I) (D.C. Cir. 1972).

[10] *See Keiser*, 57 F3d at 855 (III) (B) ("After a court determines that character evidence is admissible under Rule 404, it must next turn to Rule 405 to determine what *form* that evidence may take."); *see also* OCGA § 24-4-405 (a) ("In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion."); *id* § 24-4-405 (b) ("In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct. The character of the accused, including specific instances of the accused's conduct, shall also be admissible in a presentencing

7

argument as an alternative basis for denying the admissibility of this evidence, the court initially found that the evidence of Reese's propensity for violence was inadmissible because Oliver failed to make a required *prima facie* showing that he acted in self-defense in shooting Reese.

It is well established under Georgia law that

[f]or either the victim's general reputation for violence or specific acts of violence by the victim to be admissible, the defendant must, among other procedural and substantive burdens, make a prima facie showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant responded with force only to defend himself or herself.[11]

And under the new Evidence Code, "[e]xcept as modified by statute, the common law as expounded by Georgia courts shall continue to be applied to the admission and exclusion of evidence and to procedures at trial."[12] In this instance, we find no reason to construe OCGA §§ 24-4-404 and 24-4-405 as a modification of Georgia's long-

---

hearing subject to the provisions of Code Section 17-10-2.").

[11] *Chambers v. State*, 308 Ga. App. 748, 750 (1) (708 SE2d 651) (2011); *see Collier v. State*, 288 Ga. 756, 756 (2) (707 SE2d 102) (2011); *Alexander v. State*, 285 Ga. 166, 167 (2) (675 SE2d 23) (2009); *Chandler v. State*, 261 Ga. 402, 407 (3) (405 SE2d 669) (1991).

[12] OCGA § 24-1-2 (e).

8

standing requirement that a defendant must first make a *prima facie* showing of self-defense before requiring a trial court to determine whether evidence pertaining to the victim's character is admissible.

And here, Oliver failed to make a *prima facie* showing that he acted in self-defense. As noted *supra*, the evidence below demonstrates that Reese was a guest of Oliver's girlfriend, Donald, when Oliver arrived at her apartment uninvited, loudly banged on the front door while angrily demanding to be let inside, and then kicked in the back door before chasing Donald upstairs. Thus, when the unarmed Reese began walking up the stairs to confront him, Oliver was already the aggressor in the situation and had precipitated the deadly encounter that ensued.[13] In fact, given the

---

[13] *See Milner v. State*, 281 Ga. 612, 613 (2) (641 SE2d 517) (2007) (holding that defendant failed to make a *prima facie* showing of justification for his actions, and thus, trial court did not err by excluding evidence of murder victim's prior acts of violence when evidence showed that victim began his confrontation with defendant after defendant brandished a gun and demanded that victim apologize for an earlier altercation); *Phillips v. State*, 271 Ga. 489, 490 (2) (521 SE2d 573) (1999) (holding that defendant failed to make *prima facie* showing that victim assaulted her or that defendant was honestly trying to defend herself, as required for admission of evidence of victim's prior conviction, when evidence showed that defendant instigated the confrontation that led to victim approaching and offering to fight defendant); *Walden v. State*, 267 Ga. 162, 163 (2) (A) (476 SE2d 259) (1996) (holding that defendant's testimony that his father advanced toward him with fists clenched did not show that his father assaulted him or that he was defending himself when he fatally shot father and, thus, failed to establish *prima facie* case of justification required for admission of evidence of father's prior acts of violence); *see also* OCGA § 16-3-21 (b) ("A

9

violent and tumultuous circumstances under which Oliver entered Donald's apartment, Reese would have been justified in using force to subdue Oliver.[14] Accordingly, the trial court did not abuse its discretion in finding that Oliver failed to make a *prima facie* showing that he acted in self-defense, and thus, excluding evidence of Reese's propensity for violence.

Given the foregoing circumstances, we conclude that Oliver's failure to make a *prima facie* showing that he acted in self-defense necessarily means that he cannot

---

person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he . . . (1) [i]nitially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant; (2) [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony; or (3) [w]as the aggressor or was engaged in a combat by agreement unless he withdraws from the encounter and effectively communicates to such other person his intent to do so and the other, notwithstanding, continues or threatens to continue the use of unlawful force."); *Brunson v. State*, 293 Ga. 226, 227 (2) (744 SE2d 695) (2013) ("A person is not justified in using force when he is the aggressor or provokes the use of force against himself.").

[14] *See* OCGA § 16-3-23 (1) ("A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if . . . [t]he entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence. . . .").

10

satisfy OCGA §§ 24-4-404 (a) (2)'s requirement of demonstrating a "pertinent trait of character of the alleged victim of the crime." As such, there is no need for us to address Oliver's contention that the court incorrectly applied OCGA § 24-4-405.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur*.