302 Ga. 464
FINAL COPY

S17A1149. TIMMONS v. THE STATE.

HINES, Chief Justice.

Kyle Devonte Timmons appeals his convictions and sentences for felony murder, aggravated assault, and aggravated battery, in connection with the shooting death of Dominique Alexander Spears. For the reasons that follow, we affirm in part and vacate in part.[1]

Construed to support the verdicts, the evidence showed that a month before Spears was killed, Timmons visited Marshawn Hamilton in Rome, Georgia, a town in which Timmons had lived before moving away. During that visit, Timmons and Hamilton went to a sports bar, which Spears and some

[1] The crimes occurred on September 23, 2014. On December 5, 2014, a Floyd County grand jury indicted Timmons for malice murder; felony murder while in the commission of aggravated assault and aggravated battery; aggravated assault; and aggravated battery. Timmons was tried before a jury October 5-7, 2015, and found not guilty of malice murder, but guilty of all other charges; on December 15, 2015, Timmons was sentenced to life in prison for felony murder, and two concurrent sentences of 20 years in prison for aggravated assault and aggravated battery. On January 4, 2016, Timmons filed a motion for new trial, which he amended on August 15, 2016; the motion, as amended, was denied on August 29, 2016. Timmons filed a notice of appeal on September 6, 2016; his appeal was docketed in this Court for the April 2017 term and submitted for decision on the briefs.

friends were patronizing. When Timmons began to light a cigarette, Spears snatched it from his mouth. Timmons asked that his cigarette be returned; Spears refused and pushed Timmons against a wall; Timmons punched Spears in the face; Hamilton intervened; and he and Timmons left the bar. The next day, Spears telephoned Hamilton and said he wanted to fight Timmons; on a speaker phone, Timmons said he did not want to fight Spears, and Spears said that he would fight Timmons the next time he saw him.

During a visit to Rome on September 23, 2014, Timmons arranged for Tiffany Chambers to drive him, Lamar Lashley, and Aspen Donaldson to Donaldson's apartment; Spears lived in the same apartment complex, in a building near Donaldson's building. When they arrived at the apartment complex, Donaldson went into her apartment and the others stayed in the car. After a short period, Donaldson returned to the car, and told Timmons to join her in the apartment. At that time, Spears was walking near the front of the car; Timmons exited the car, and the two men quickly confronted each other. Lashley testified that the men "scuffled"; Chambers could not confirm a physical fight, but saw Timmons "raise his arm toward Mr. Spears." Spears was shot twice with a .22 caliber pistol. One projectile entered the front left side of

2

his chest, traveled slightly upward, and lodged in the muscles of his back; the other projectile entered the right side of the back of his neck, and traveled upward into Spears's brain; either of the bullet wounds would have proved fatal. After the shooting, Timmons ran, throwing the pistol aside as he did so; he arrived at a nearby house, asked the occupant to call 911, saying that he had shot a man, and was soon arrested. Later, Donaldson made a Facebook post stating that she believed the shooting was in self-defense, that Spears should not have "ran up on Kyle," that Spears had repeatedly told her that he would beat up Timmons, and that "I guess he got what he deserves but at the wrong time when call [sic] had that tool on him"; she testified that the reference to "call" in the Facebook post was "meant to say Kyle." When asked during an interview with an investigator about this Facebook post, Donaldson said that, while in the car, Timmons had a small pistol in his pocket, that he pulled it out of his pocket when he got out of the car, and that this was the first time Donaldson had seen Timmons with a pistol. She also told the investigator that Timmons knew that Spears lived in the complex, that Timmons stated that there were some hostile people who lived there, and, in the car before the shooting, she heard Timmons slide the action on the pistol.

3

Timmons testified in his defense that he did not know that Spears lived in the apartment complex; Spears saw him in the car; Spears came up to him as he exited the car and struck him in the face; dazed, he grabbed Spears and felt something at Spears's waistband; he pulled the object from Spears's waistband; he realized by both feel and vision that the object was a handgun; he pushed Spears away, closed his eyes, and fired twice; and, he feared for his life during the confrontation. However, in statements to police investigators made the day of the shooting, Timmons said that Spears lived across from the building in which Donaldson lived, Spears was coming from "his house" when the confrontation at the car occurred, and that as Spears arrived at the car, he exited it. Timmons also told the investigators that as he exited, Donaldson urged that he "don't do nothing" regarding his poor relationship with Spears.

1. Timmons does not contest the legal sufficiency of the evidence of his guilt as to the charges of which he was convicted. Nevertheless, in accordance with this Court's general practice in appeals of murder cases, we have reviewed the record and conclude that the evidence at trial authorized the jury to find Timmons guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560)

4

(1979).

However, Timmons was charged with one count of felony murder "during the commission of a felony, to wit: AGGRAVATED ASSAULT AND AGGRAVATED BATTERY." He was found guilty of that crime, as well as separate counts of aggravated assault and aggravated battery, and sentenced for all three of those crimes. "This was error as the underlying felonies of aggravated assault [and] aggravated battery . . . merged as a matter of fact into the felony murder. [Cits.]" *Smith v. State*, 300 Ga. 538, 542 (4) (796 SE2d 666) (2017). Consequently, the sentences for aggravated assault and aggravated battery must be vacated. Id.

2. (a) The State was permitted to introduce, in its case-in-chief, evidence of posts Timmons had made on Facebook ("the Facebook evidence") as evidence of his allegedly violent character and behavior in conformity therewith. The posts were on Timmons's Facebook page, were not part of any conversation with another person on Facebook, and did not refer to Spears or any other individual. The posts used racially charged terms, expressed that Timmons was not afraid to die or go to jail, referred to shooting or killing someone, asserted that if someone "play[ed]" with him "ya family missing ya," and included the

5

text "#lifeshortdontmakeitshorter."[2]  The trial court determined that, as Timmons was claiming the defense of self-defense, whether Spears had a propensity for violence was an issue necessarily "pertinent" to the case, and thus, by virtue of the fact that Timmons claimed self-defense, the State would be allowed under OCGA § 24-4-404 (a) (2)[3] to show Timmons's own character

---

[2] The State presented the evidence in a printed exhibit that showed the following posts, in the order presented in the exhibit:
"September 11 [2014] at 1:48am
My leather so soft but my gun so hard nigga play with me shoot his ass in broad day"
"September 11 [2014] at 1:25am
For you niggaz playing with young i ain't scared to die #lifeshortdontmakeitshorter"
"September 22 [2014] at 7:26am
You a pussy ass nigga and u show it nigga"
"September 20 [2014] at 2:24pm
This shit personal i been waiting on this day"
"September 20 [2014] at 2:37am
Niggaz say they got a ticket on me haha bitch i still do what the fuhk i wanna one thing about I ain't scared to die play wit it"
"September 14 [2014] at 8:58pm
They was some real niggaz that i would kill a nigga about we where the money team until they started acting like some bitchez #CantTrustNiggaz"
"Ain't scared to die go to jail it ain't shit put it on ma dukes these niggas ain't seeing me take care home for you play wit me young man have ya family missing ya bitch ass. Sat. at 2:07pm" (No testimony providing a more definite date regarding this post was presented.)

[3] OCGA § 24-4-404 reads:
(a) Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for:
(1) Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under paragraph (2) of this subsection, evidence of the same trait of character of the accused offered by the prosecution;
(2) Subject to the limitations imposed by Code Section 24-4-412, evidence of a pertinent trait of character of the alleged victim of the crime

6

for violence, and could do so by introducing Timmons's Facebook posts demonstrating that "character." However, this ruling represents a misunderstanding of OCGA § 24-4-404 (a) (2).

For trials that take place after January 1, 2013, "[t]he admissibility of evidence of a victim's character is . . . governed by OCGA §§ 24-4-404 and 24-4-405.[4] See *Mohamud v. State*, 297 Ga. 532, 535 (3) (773 SE2d 755) (2015)."

offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; or

(3) Evidence of the character of a witness, as provided in Code Sections 24-6-607, 24-6-608, and 24-6-609.

(b) Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

[4] OCGA § 24-4-405 reads:

(a) In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion.

(b) In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct. The character of the accused, including specific instances of the accused's conduct, shall also be admissible in a presentencing hearing subject to the provisions of Code Section 17-10-2.

7

*Gibson v. State*, 300 Ga. 494, 498 n. 8 (796 SE2d 712) (2017).  And, OCGA §§ 24-4-404 and 24-4-405 govern not only the admissibility of evidence of a victim's character, but more generally the admissibility of "[e]vidence of *a person's* character or a trait of character[.]"  OCGA § 24-4-404 (a) (Emphasis supplied.)   See also OCGA § 24-4-405 (a). ("In *all proceedings* in which evidence of character or a trait of character of *a person* is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion.") (Emphasis supplied.)

In 2011,

> our General Assembly enacted a new Evidence Code, of which [OCGA §§ 24-4-404 and 24-4-405 are] part. Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit. [Cit.]

*Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) (Footnote omitted.)

And, as in the similar Federal Rules 404 and 405, OCGA § 24-4-404 deals with

---

(c) On cross-examination, inquiry shall be allowable into relevant specific instances of conduct.

*whether* character evidence is to be admitted, and OCGA § 24-4-405 deals with *the methods* by which character may be proved. See *United States v. Keiser*, 57 F3d 847, 855-856 (III) (B) (9th Cir. 1995). See also *Oliver v. State*, 329 Ga. App. 377 (765 SE2d 606) (2014). Thus, OCGA § 24-4-404 (a) provides that evidence of a person's character is generally not admissible, except in the circumstances set forth in subsections (a) (1), (a) (2), and (a) (3).[5] And, if evidence "of a person's character or a trait of character [is to be admitted] for the purpose of proving action in conformity therewith on a particular occasion" under OCGA § 24-4-404 (a), it is required by OCGA § 24-4-405 (a) that proof of such "character or a trait of character . . . be made by testimony as to reputation or by testimony in the form of an opinion." As we have stated,

> OCGA § 24-4-405 (a) . . . provides: "In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion." Therefore, as a general rule, character evidence of a victim is limited to reputation or opinion, *not* specific bad acts.

*Mohamud v. State*, supra at 536 (Footnote omitted; emphasis in original.) See also *United States v. Talamante*, 981 F2d 1153, 1156 (I) (10th Cir. 1992)

---

[5] OCGA § 24-4-404 (a) (3) specifically addresses impeachment of witnesses, a matter not pertinent to this appeal.

("[T]estimony describing specific instances of the victim's conduct, as opposed to reputation or opinion evidence . . . [is] not admissible under [Federal] Rule 404 (a) (2) to prove that the victim acted in conformity with the conduct.") And, such is the case whether the character evidence at issue is that of an accused such as Timmons, or of a victim such as Spears.

The State argued at trial that the Facebook evidence was admissible due to the interplay of OCGA § 24-4-404 (a) (1) and (a) (2), an argument that the trial court accepted. Under OCGA § 24-4-404 (a) (1), "if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under [OCGA § 24-4-404 (a)] (2)," the prosecution may offer "evidence of the same trait of character of the accused." The State asserts that Timmons, through cross-examination, introduced "evidence of a pertinent trait of character of the alleged victim of the crime" (i.e., Spears's violent character) within the meaning of OCGA § 24-4-404 (a) (2),[6] and that this fact entitled the State to offer "evidence of the same trait of character of the accused" under OCGA § 24-4-404 (a) (1). But, as noted above, OCGA § 24-4-405 requires that

_____

[6] Evidence admitted under OCGA § 24-4-404 (a) (2) is "[s]ubject to the limitations imposed by Code Section 24-4-412." That Code section addresses admissibility of a complainant's prior sexual behavior in prosecutions of certain sexual offenses, and is not pertinent here.

10

proof of a pertinent character trait of an alleged victim "shall be made by testimony as to reputation or by testimony in the form of an opinion." The Facebook evidence was not such "testimony as to reputation or . . . testimony in the form of an opinion." Thus, even if, through cross-examination, Timmons elicited testimony touching upon Spears's character, it was not evidence of the victim's character within the meaning of OCGA § 24-4-404 (a) (1), and not "evidence of a trait of character [i.e., violence] of the alleged victim of the crime . . . offered by [the] accused and admitted under [OCGA § 24-4-404 (a) (2)]." Accordingly, it did not open the door to "evidence of the same trait of character of the accused [i.e., violence] offered by the prosecution" under OCGA § 24-4-404 (a) (1).

To be clear, the relevant Code sections show that we must reject the specific argument that the State made, and that the trial court accepted, i.e., that, as Timmons raised self-defense, it would necessarily be an issue in the case whether Spears had a violent "character or a trait of character" for violence under OCGA § 24-4-404 (a), and thus, the very fact that Timmons raised the defense meant that the State could introduce evidence to show Timmons's general character for violence, under the guise of admissibility pursuant to

11

OCGA § 24-4-404 (a) (1) and (2). Indeed, we recently addressed the admissibility of character evidence under OCGA § 24-4-404 (a), and made it apparent that the Code section mandates certain timing, in that for the State to be able to introduce character evidence, "a *defendant* [must] first introduce evidence of a pertinent character trait of the victim or evidence that the victim was the first aggressor before the State may introduce [proper character] evidence to rebut that which was presented by the defendant." *Revere v. State*, 302 Ga. 44, 48-49 (2) (a) (805 SE2d 69) (2017) (Emphasis in original.) Under OCGA § 24-4-404 (a), the accused may certainly open the door to the State's introduction of character evidence — evidence of his own character, or that of the victim — but it must be by the strictures of that Code subsection, which did not occur.

Timmons properly objected to the Facebook evidence when the State offered it as character evidence under OCGA § 24-4-404 (a), and the evidence should have been excluded on the ground raised.

(b) Despite the erroneous admission of the Facebook evidence, the State nonetheless contends that the error must be considered harmless. Faced with such an evidentiary ruling,

"[i]n determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so." [Cit.] "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict."

*Smith v. State*, 299 Ga. 424, 432 (2) (788 SE2d 433) (2016) (Footnote omitted.)

And, under that review, it is clear from Timmons's statements to investigating law enforcement officers that he knew that Spears lived across from the building in which Donaldson lived, as he indicated Spears's apartment on a sketch of the area he made for the officers and stated that Spears was coming from "his house" when he arrived at the car; he also told the investigators that as he got out of the car, Donaldson said to him "don't do nothing" regarding his prior bad blood with Spears.[7] Despite Timmons's self-serving testimony that he took the pistol that he used to shoot Spears from the victim's waistband, Donaldson reported that he had taken the pistol with him to Spears's apartment complex, and prepared it for use before exiting the car. And, even from Timmons, there was no evidence that after the time Timmons stated that he removed a pistol

_____

[7] Pretermitting whether the erroneous admission of the evidence caused Timmons to decide to testify when he otherwise may have decided not to, see *Childress v. State*, 266 Ga. 425, 434-438 (4) (467 SE2d 865) (1996), the evidence of his statement to investigators was admitted without regard to whether Timmons decided to testify.

13

from Spears's waistband, Spears produced, or attempted to produce, any weapon. Further, the physical evidence demonstrated that Timmons shot Spears not only in the chest, but in the back of the neck.

Considering the evidence presented at trial, and weighing it as we believe that reasonable jurors would have done, we conclude that the erroneous admission of the Facebook evidence did not contribute to the jury's verdicts. Smith v. State, supra at 432 (2). See also *Rivera v. State*, 295 Ga. 380, 382 (2) (761 SE2d 30) (2014). Accordingly, a new trial is not authorized on this ground.

Judgments affirmed in part and vacated in part. All the Justices concur, except Hunstein and Nahmias, JJ., who concur in part and dissent in part.

HUNSTEIN, Justice, concurring in part and dissenting in part.

I agree that the evidence is sufficient to sustain the convictions here, and I fully concur with Divisions 1 and 2 (a); however, I disagree that the admission of the Facebook evidence was harmless, and, thus, I dissent as to Division 2 (b).

There is no doubt that "[t]he [Facebook] evidence is classic evidence of bad character, which was offered by the [State] to prove only 'action in conformity therewith.'" (Citation omitted.) United States v. Phaknikone, 605 F3d 1099, 1109 (11th Cir. 2010). The question then becomes whether such error is harmless. The majority concludes, after ostensibly "weigh[ing] the evidence as [they] would expect reasonable jurors to have done so," Smith v. State, 299 Ga. 424, 432 (788 SE2d 433) (2016), that "the erroneous admission of the Facebook evidence did not contribute to the jury's verdicts." I disagree with this harmless-error analysis.

The review of the facts included in Division 2 is seemingly nothing more than a second sufficiency analysis wherein the majority merely reiterates the

facts and again draws all reasonable inferences in favor of the verdict. This, however, is not the standard. See, e.g., <u>Boothe v. State</u>, 293 Ga. 285, 289 (745 SE2d 594) (2013) ("In doing so, we weigh the evidence as we would expect reasonable jurors to have done so, *as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case*." (Emphasis supplied.)). This is especially troubling because the evidence underlying Timmons' guilt is not particularly overwhelming and because Timmons was acquitted of malice murder. Though there is no dispute that Timmons and Spears had previous altercations and that Timmons eventually shot Spears, there is conflicting evidence concerning the underlying altercation on the night of the murder. Indeed, the jury was required to glean from the trial testimony whether Timmons was actually seeking out Spears on the night in question, whether Timmons was, in fact, armed, and whether Timmons was the aggressor or acted out of fear for his life; notably, Timmons was discovered to have a cut on his lip following the altercation, and he immediately asked nearby neighbors to report the shooting to 911. The evidence requires factfinders to draw numerous inferences from the evidence, and the error here is harmless only if *all* reasonable inferences are drawn in favor of the verdicts, which this Court simply

2

must not do.  <u>Boothe</u>, supra.

The State must have known that this case would come down to inferences and credibility, and the Facebook evidence — which the State suggested below portrayed Timmons as a "gangster" — indeed pushes the jury to conclude that Timmons had a propensity for violence and was willing to go to prison (or die) for shooting his foes.  In light of the nature of the evidence presented below and the potent content of the Facebook evidence, I cannot agree that it is "highly probable" that the erroneous admission of the Facebook evidence did not contribute to the verdict.

I am authorized to state that Justice Nahmias joins in this partial concurrence and partial dissent.

Decided October 30, 2017.

Murder. Floyd Superior Court. Before Judge Durham.

David L. Lumpkin, for appellant.

Leigh E. Patterson, District Attorney, Natalee L. Staats, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.

4