**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 5, 2020**

# In the Court of Appeals of Georgia

A20A1256. NEAL v. THE STATE.

BARNES, Presiding Judge.

A jury found Sylvester Neal guilty of three counts of child molestation, and the trial court denied his motion for new trial. On appeal, Neal contends that the trial court erred by allowing the State to comment on and present evidence about his pre-arrest silence and by instructing the jury on the issue of whether his silence was an adoptive admission. For the reasons discussed more fully below, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." (Citation and punctuation omitted.) *Phillips v. State*, 347 Ga. App. 147, 147 (817 SE2d 711) (2018). So viewed, the evidence showed that Neal lived with his girlfriend and her children for five years. According to the girlfriend's daughter, Neal sexually

abused her during that time period. When the daughter was 11 or 12 years old, she was asleep on the living room couch, and Neal woke her up and touched her underneath her clothes on her breasts and vagina. Subsequently, when the daughter turned 13 years old, Neal began having sexual intercourse with her. The sexual intercourse occurred on repeated occasions. The daughter testified that Neal would come into her bedroom when she was asleep at night, would pull down her clothes and have sexual intercourse with her, and would flush the condom that he used down the toilet. The daughter further testified that she would tell Neal that she did not want to have sexual intercourse with him, but he would become angry, and she did not tell anyone about the ongoing sexual abuse because she was scared that Neal would hurt her.

The last time that Neal had sexual intercourse with the daughter was in May 2013 when she 15 years old. That month, Neal's girlfriend came home one night to find her daughter asleep on a mattress in the living room with Neal beside her in only his boxers and with his arm around her.[1] Neal's girlfriend became upset and, after waking her daughter and sending her to her bedroom, she and Neal argued until Neal

_____

[1] According to the daughter, the mattress had been placed in the living room "to get air from the air conditioning" because the bedrooms only had fans.

went to work the next morning. After Neal left for work, the girlfriend talked to her daughter, who at first denied that Neal had ever touched her inappropriately but then began to cry and asked her mother to call the police.

The girlfriend did not call the police at that point and instead told Neal that he needed to come home from work because of an emergency. The girlfriend also contacted her best friend, who was Neal's niece, and asked her to come to the apartment. Once everyone arrived at the apartment, Neal, his girlfriend, his niece, and the daughter congregated in one of the bedrooms. While they were together in the bedroom, the daughter, who was crying and hysterical, told the niece that Neal had sexual intercourse with her. Neal, who was sitting nearby, said nothing. The girlfriend then hit Neal several times until the niece was able to pull her off of him and call the police. The girlfriend shouted accusations at Neal and continued to do so when the police arrived on the scene a few minutes later. Neal's girlfriend was shouting, "He touched my daughter," and "He was with my daughter." Neal told one of the officers that his girlfriend had hit him but said nothing about the accusations being shouted by her.

A detective assigned to the case spoke with the daughter at the apartment, and the daughter told the detective that she had just disclosed to her mother that Neal had

been having sexual intercourse with her. Later that day, the detective spoke again with the daughter at the police station, and the daughter provided additional details about the sexual abuse and stated that Neal last had sexual intercourse with her a few weeks ago. A case manager from the Washington County Department of Family and Children Services ("DFCS") also spoke with the daughter that day, and the daughter told her that Neal had touched her inappropriately when she was 12 years old, began having sexual intercourse with her several years ago, and had sexual intercourse with her earlier that month. A few days later, during a recorded forensic interview, the daughter reiterated that Neal had touched her inappropriately and had sexual intercourse with her for several years. The daughter also underwent a forensic medical examination that neither confirmed nor dispelled the sexual abuse allegations, but the nurse practitioner who performed the examination testified that vaginal tissue heals quickly and that in many forensic examinations there is no physical evidence of the alleged abuse.

Neal was indicted on three counts of child molestation. At the ensuing jury trial, the daughter, who was then 16 years old, testified about the sexual abuse as summarized above, and the State introduced into evidence her recorded forensic interview in which she described the abuse. Neal's girlfriend, his niece, the detective,

4

and the DFCS case manager also testified about what the daughter disclosed to them regarding the sexual abuse. Neal elected not to testify but called one defense witness, an expert in child psychology and forensic interviewing, who testified to some of his concerns about the manner in which the forensic interview of the daughter was conducted.

Most pertinent to the present appeal, prior to the trial, the State filed a motion seeking permission to introduce evidence of Neal's alleged admissions by silence that occurred before his arrest, and the trial court granted the motion over objection from Neal. Subsequently, during the trial, Neal's girlfriend, her daughter, and the niece testified that when they were together with Neal in the apartment in May 2013 and he was accused of having sex with the daughter, he said nothing. One of the responding officers also testified that Neal remarked that his girlfriend had hit him but said nothing regarding the girlfriend's accusations that he had sexually abused her daughter. During the State's opening statement and closing argument, the prosecutor called attention to the fact that Neal was silent when his girlfriend's daughter accused him of having sexual intercourse with her and when his girlfriend reiterated those accusations. And, at the State's request and over Neal's objection, the trial court instructed the jury on the issue of adoptive admissions by silence.

5

Following its deliberations, the jury found Neal guilty of the charged offenses. The trial court denied his motion for new trial, as amended, and in its order, the court held that evidence of Neal's pre-arrest silence was properly admitted as an adoptive admission under Georgia's current Evidence Code and the test enunciated in *State v. Orr*, 305 Ga. 729, 740 (4) (827 SE2d 892) (2019).

1. Neal contends that the trial court erred in allowing the State to comment upon and introduce evidence that he remained silent when the daughter and girlfriend accused him of having sexual intercourse with the daughter. Quoting *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), Neal maintains that any comment or evidence regarding a criminal defendant's pre-arrest silence is "far more prejudicial than probative" and must be excluded.[2] But our Supreme Court recently held in *Orr* that Georgia's current Evidence Code abrogated *Mallory*'s categorical rule excluding comment or evidence concerning a defendant's pre-arrest silence. *Orr*, 305 Ga. at 739 (3). See *Taylor v. State*, __ Ga. __, __ (3), n. 6 (Case No. S19A1588, decided Feb. 10, 2020). Instead, under the current Evidence Code, which applies here,[3] "careful

---

[2] Neal does not contend that the introduction of evidence of his pre-arrest silence was prohibited by the federal or state constitutions.

[3] The current Evidence Code applies to trials commenced on or after January 1, 2013. See Ga. L. 2011, p. 99, § 101. Neal's trial was in October 2014.

attention must now be paid to the specific evidence offered and the specific theory and rules the proponent of that evidence contends authorize its admission." *Orr*, 305 Ga. at 741 (4) (a). And one circumstance in which a defendant's pre-arrest silence may be relevant and admissible is in the context of an adoptive admission. Id. at 740 (4) (a).

As our Supreme Court explained in *Orr* and subsequent cases:

[U]nder Georgia's current Evidence Code, a defendant's silence may, in certain circumstances, communicate that he has adopted another person's statement as true, making that statement admissible under OCGA § 24-8-801 (d) (2) (B) [("Rule 801")], which defines "admissions" not excluded by the hearsay rule when offered against a party to include "[a] statement of which the party has manifested an adoption or belief in its truth." . . .

For evidence to qualify as a criminal defendant's adoptive admission under Rule 801 (d) (2) (B), the trial court must find that two criteria were met: first, that the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and second, that there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.

Before admitting a statement as an adoptive admission, the trial court must determine, as a preliminary question, whether these two

7

criteria have been met. The jury is then responsible for making the ultimate determination of whether the defendant adopted the statement as true. The circumstances to be considered include any physical or psychological impediments to the party's responding to the statement (for example, circumstances showing that a party feared to speak would negate any inference that the party agreed or adopted the statement).

(Citations, punctuation, and footnote omitted.) *Wilkins v. State*, __ Ga. __, __ (2) (Case No. S19A1403, decided Feb. 28, 2020). See *Westbrook v. State*, __ Ga. __, __ (5) (b) (Case No. S19A1120, decided Feb. 28, 2020); *Orr*, 305 Ga. at 740 (4) (a). A trial court's decision whether to admit or exclude evidence as an adoptive admission under Rule 801 (d) (2) (B) will not be disturbed on appeal absent an abuse of discretion. *Wilkins*, __ Ga. at __ (2).

We discern no abuse of discretion by the trial court in this case. The trial court was authorized to find that an accusation that a defendant had sexual intercourse with a minor was the type of statement that "under the circumstances, an innocent defendant would normally be induced to respond." (Citation and punctuation omitted.) *Orr*, 305 Ga. at 740 (4) (a). See *Westbrook*, __ Ga. at __ (5) (b) (innocent defendant would normally be induced to respond when another person stated that he recognized the defendant in surveillance video of shooting); *Wilkins*, __ Ga. at __ (2)

8

(concluding that "trial court could reasonably determine that a [third party's] statement referring to a bloody shirt in the trunk of the car that [the defendant] drove up in and was standing next to as the shirt 'we' used to wipe blood and fingerprints off a gun is the kind of statement that would normally prompt an innocent person to clarify that he was not part of the 'we'"). Likewise, the trial court was authorized to find that there were sufficient foundational facts from which the jury could infer that Neal heard, understood, and acquiesced in the accusations made by the daughter and girlfriend, given that the accusations were made in the apartment in his presence. See *Wilkins*, __ Ga. at __ (2) (evidence reflected that defendant "was looking at and within earshot of [the person who] made the statement"). See also *United States v. Jenkins*, 779 F2d 606, 612 (11th Cir. 1986) (conspirator's statement to another person was made in a bedroom where the defendant was present); *United States v. Carter*, 760 F2d 1568, 1579-1580 (VII) (A) (11th Cir. 1985) (defendants were sitting in car with individual who made the incriminating statements). Moreover, the trial court was entitled to find that there were no impediments to Neal responding to the accusations.[4] Accordingly, the trial court acted within its discretion in concluding that

---

[4] As the trial court found, "[t]he only physical impediment would have been [the girlfriend's] punches, but those occurred *after* [Neal's] silence" in the face of the daughter's accusations. (Emphasis supplied.) And there was evidence that the

9

the daughter and girlfriend's accusations of sexual abuse and Neal's failure to respond to them were admissible as adoptive admissions under Rule 801 (d) (2) (B). See *Westbrook*, __ Ga. at __ (5) (b); *Wilkins*, __ Ga. at __ (2).

In so ruling, we are mindful that Neal's girlfriend continued to make accusations once the police officers arrived and that one of the officers testified that Neal did not say anything in response to those accusations. Where the accusatory "statement was made by or in the presence of the police, the defendant's silence may be best explained as a cautious exercise of his right to remain silent." Paul S. Milich, Georgia Rules of Evidence § 18:4 (updated October 2019). In the present case, however, Neal was not under arrest or police interrogation when he failed to respond to his girlfriend's accusations, and in fact, willingly spoke with the police by telling them that his girlfriend had hit him. Nor has Neal argued that a distinction should be drawn in this case between the accusations made before or after the police arrived on the scene. Under these circumstances, we cannot say that the trial court abused its discretion in permitting the officer to testify about Neal's failure to respond to the

daughter pulled the girlfriend off of Neal before the police arrived. Hence, the trial court was authorized to make the preliminary finding that the girlfriend striking Neal was not the cause of his silence, but rather was a brief reaction to it and did not prevent him from responding to the sexual abuse allegations.

girlfriend's allegations under Rule 801 (d) (2) (B). Compare *United States v. Fletcha*, 539 F2d 874, 877 (2d Cir. 1976) (defendant's silence in response to incriminating statement made by co-defendant not admissible as adoptive admission, where statement was made in presence of special agent after all the defendants had been arrested). And, in any event, even if Neal's failure to respond to his girlfriend's accusation in the presence of the officer was not properly admitted as an adoptive admission, its admission was harmless, given that Neal's failure to respond to the incriminating accusation made against him before the police arrived was properly before the jury. Accord *Cane v. State*, 285 Ga. 19, 20–21 (2) (a) (673 SE2d 218) (2009) (any error in admission of defendant's statements made during videotaped interview with police was harmless, given that defendant made the same statements to another witness whose testimony was properly admitted at trial). See generally *Hill v. State*, 306 Ga. App. 663, 665 (1) (703 SE2d 98) (2010) ("Evidence which is cumulative of other legally admissible evidence of the same fact, renders harmless admission of incompetent evidence.") (citation and punctuation omitted).

Lastly, we note that even if evidence of a defendant's pre-arrest silence constitutes an adoptive admission, the evidence still may be subject to exclusion

under the balancing test set forth in OCGA § 24-4-403 ("Rule 403").[5] See *Orr*, 305 Ga. at 741-742 (4) (b). This is because "'[i]n most circumstances silence is so ambiguous that it is of little probative force,' especially if the defendant does not later testify inconsistently." Id. at 742 (4) (b), quoting *United States v. Hale*, 422 U. S. 171, 176 (95 SCt 2133, 45 LE2d 99) (1975). Nevertheless, "exclusion of evidence under Rule 403 is an extraordinary remedy that should be used only sparingly to prohibit matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) Id. And "the exercise of discretion under Rule 403 is case-specific and usually turns on the trial court's assessment of the probative value and prejudicial effect of the particular evidence at issue." Id.

Here, the trial court applied the Rule 403 balancing test and concluded that the probative value of Neal's pre-arrest silence was not substantially outweighed by the danger of unfair prejudice. The court noted that Neal heard the accusation made against him, "was capable of understanding the possible repercussions" of not

---

[5] Rule 403 provides: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

12

responding to an accusation of having sexual intercourse with a minor, was not under arrest at the time, and was not impeded from responding. Under these circumstances, and given the abuse-of-discretion standard of review, "[w]e cannot say that the trial court abused its discretion in performing the balancing required by the rule." *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017). See *Wilkins*, __ Ga. at __ (2), n.8 (upholding trial court's decision not to exclude evidence of defendant's silence under Rule 403, where a jury could find that the defendant's silence "was *not* ambiguous but rather indicated his adoption of [the other individual's] incriminating statement about the crimes") (emphasis in original).

2. Neal also contends that the trial court erred by instructing the jury on the issue of whether his silence was an adoptive admission. The trial court charged the jury:

> Evidence has been presented that statements suggested the participation of the Defendant Sylvester Neal in the crimes charged in the indictment were made by [his girlfriend] in her apartment on May 24, 2013, in the presence of the Defendant and that such statements were not denied or objected to by the Defendant. If you should find that the Defendant was present and actually heard and understood those alleged statements and that those alleged statement were made under such circumstances that the Defendant would be expected to deny them if they were not true,

13

then you may consider whether his silence was an admission of the truth of those statements.[6]

According to Neal, the trial court's instruction was improper because it "differed noticeably" from the current pattern jury instruction for adoptive admissions predicated on the pre-*Miranda* silence of a criminal defendant.[7]

We conclude that the trial court's instruction adequately informed the jury of the pertinent issues pertaining to adoptive admissions by silence. As our Supreme Court has explained:

Many provisions of [Georgia's current] Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning

---

[6] The record contains no request by the State for an adoptive-admission instruction concerning Neal's silence in response to the accusation made by the daughter.

[7] The current version of the pattern jury instruction on "Silence (Pre-Miranda) as an Admission" provides:
Silence in the face of a question or accusation may be considered for what it may show only if from all the evidence you find that
– the (defendant) (person in question) (heard) (received) the question, accusation, or communication;
– a reasonable person would normally be induced to respond;
– there was an opportunity to respond; and
– the (defendant) (such person) remained silent or did not respond.
Suggested Pattern Jury Instructions, Volume II: Criminal Cases § 1.36.15 (4th ed., 2020).

of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit.

(Citation and punctuation omitted.) *Timmons v. State*, 302 Ga. 464, 468 (2) (a) (807 SE2d 363) (2017). The jury instruction given by the trial court mirrored the admission-by-silence instruction given in *Carter*, 760 F2d at 1580 (VII) (A), n. 5,[8] and in that case, the Eleventh Circuit found that the jury instruction "adequately instructed the jury on the important considerations regarding such statements." Id. Furthermore, in *Wilkins*, __ Ga. at __ (2), n. 7, our Supreme Court stated that "[t]he

---

[8] The jury instruction in *Carter* stated:
Evidence has been presented that statements suggesting the participation of [the defendants] in the crimes charged in the indictment were made by [two individuals] in the car in the early morning hours of July 10th, 1981, and that such statements were not denied or objected to by either [d]efendant . . . .

If the jury finds that [the defendants] were present and actually heard and understood those alleged statements and that those alleged statements were made under such circumstances that those defendants would be expected to deny them if they were not true, then you may consider whether their silence was an admission of the truth of the statements.
*Carter*, 760 F2d at 1580 (VII) (A), n. 5.

jury may be instructed on [the] issue [of admissions by silence]" and cited to *Carter*.

Consequently, we discern no error in the trial court's instruction in the present case.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*